UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BURL and CATHY McLIECHEY,
husband and wife, on behalf of a
class of persons similarly situated,

       Plaintiffs,

File No. 5:05-CV-103

v.

HON. ROBERT HOLMES BELL

BRISTOL WEST INSURANCE
COMPANY, f/k/a Reliant Insurance
Co., f/k/a LHIW Insurance Company,

       Defendant.
                                                              /

## O P I N I O N

This matter comes before the Court on Defendant Bristol West Insurance Company's motion to dismiss Plaintiffs' complaint pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6). For the reasons that follow Defendant's motion will be granted.

### I.

Plaintiffs Burl and Cathy McLiechey, husband and wife, filed this class action complaint in the Kent County Circuit Court against Defendant Bristol West Insurance Company alleging that by using its insureds' economic circumstances as one of the criteria in setting automobile insurance rates Defendant has 1) breached an implied covenant of good faith and fair dealing; 2) violated the Consumer Protection Act, M.C.L. § 445.901 *et seq.*, and 3) violated Chapter 21 of the Insurance Code, M.C.L. § 500.2101 *et seq.*

Defendant removed the case to federal court pursuant to 28 U.S.C. §§ 1332(d), 1446 and 1453, because the parties are diverse in citizenship and because the value of the claims of the individual class members when aggregated exceeds the sum of $5,000,000.  Defendant now moves to dismiss Counts I and III of the complaint pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction and to dismiss Counts I, II and III pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim on which relief may be granted.

## II.

Plaintiffs' class action complaint seeks damages as a result of Defendant's alleged failure to comply with the requirements of Chapter 21 of the Insurance Code, commonly known as the "Essential Insurance Act," in the pricing of automobile insurance.  (Compl. p. 1).  The essence of the complaint is found in Count III, where Plaintiffs allege a violation of Chapter 21 of the Insurance Code.

Defendant contends that Count III of Plaintiffs' complaint is subject to dismissal for failure to state a claim pursuant to Rule 12(b)(6) because the remedies provided in Chapter 21 of the Michigan Insurance Code are exclusive, and Plaintiffs cannot circumvent these exclusive remedies by proceeding on a private cause of action in tort.

"To survive a motion to dismiss under Rule 12(b)(6), a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Advocacy Org. for Patients and Providers v. Auto Club Ins.*

*Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

Chapter 21 of the Insurance Code addresses automobile and home insurance. Rates for automobile and home insurance are subject to comprehensive rate-making standards. *See* M.C.L. §§ 500.2109-2111. An insurer is required to file its rates with the Commissioner and to certify that the rates conform to the requirements of Chapter 21. M.C.L. § 500.2108. The insurer may use the rates as soon as they are filed, but the rates are subject to the Commissioner's review and approval. M.C.L. §§ 500.2106-2107. Any person or organization who is aggrieved with respect to any insurance rate filing may apply to the Commissioner for a hearing on the filing. M.C.L. § 500.2114(1). If the Commissioner finds that the filing does not meet the requirements of sections 2109 and 2111, the Commissioner shall state the reasons for that finding and state when the filing "shall be considered no longer effective." M.C.L. § 500.2114(2). In addition, any person who believes he has been charged an incorrect premium is entitled to a private informal managerial-level conference with the insurer, and, if that fails, to a review before the Commissioner. M.C.L. § 500.2113(1). Any party who disagrees with the Commissioner's determination can request that the matter be heard by the Commissioner as a contested case. M.C.L. § 500.2113(5). Final decisions from contested case hearings are subject to judicial review under the contested case provisions of the Michigan Administrative Procedure Act. M.C.L. §§ 24.271-87 and M.C.L. §§ 24.301-06.

It is well established under Michigan law that "[w]here a statute gives new rights and prescribes new remedies, such remedies must be strictly pursued; and a party seeking a remedy under the act is confined to the remedy conferred thereby and to that only." *Monroe Beverage Co., Inc. v. Stroh Brewery Co.*, 454 Mich. 41, 45, 559 N.W.2d 297, 298-99 (1997) (quoting *Lafayette Transfer & Storage Co. v. Public Utilities Comm.*, 287 Mich. 488, 491, 283 N.W. 659 (1939)). This principle, that a new right created by statute must be pursued in strict accordance with the remedies provided by the Legislature, was recently reaffirmed by the Michigan Supreme Court:

> Where a statute gives new rights and prescribes new remedies, such remedies must be strictly pursued; and a party seeking a remedy under the act is confined to the remedy conferred thereby and to that only.

*McClements v. Ford Motor Co.,* 473 Mich. 373, 382, 702 N.W.2d 166, 171 (2005), *amended*, 474 Mich. 1201, 704 N.W.2d 68 (2005) (quoting *Monroe Beverage Co., Inc. v. Stroh Brewery Co.*, 454 Mich. 41, 45, 559 N.W.2d 297 (1997)). Thus, in *McClements*, the Court noted that the common law did not provide a remedy for workplace discrimination; that such a remedy was created only by the Civil Rights Act; and that the Civil Rights Act was the exclusive remedy for Plaintiff's claim of negligent retention based upon workplace discrimination. *McClements v. Ford Motor Co.*, 473 Mich. at 383.

Plaintiffs do not deny that the rights, obligations and remedies prescribed in Chapter 21 of the Insurance Code are new rights that have never been governed by the common law. Neither do they deny that Chapter 21 prescribes statutory remedies. Instead,

Plaintiffs contend that Michigan courts have consistently acknowledged that a private right of action may be implied where the remedy provided by statute is "plainly inadequate." *See, e.g., Genesis Center, PLC v. Blue Cross and Blue Shield of Michigan*, 243 Mich. App. 692, 695-96 (1997); *Pro-Staffers, Inc. v. Premier Mfg. Support Servs., Inc.*, 252 Mich. App. 318, 326 (2002); and *General Aviation, Inc. v. Capital Region Airport Auth.*, 224 Mich. App. 710, 715 (1997).

A number of courts have held that there is no private right of action to pursue violations of Chapter 20 of the Insurance Code. *See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Arioli*, 941 F. Supp. 646, 655 (E.D. Mich. 1996); *Isagholian v. Transamerica Ins. Corp.*, 208 Mich. App. 9, 17, 527 N.W.2d 13 (1994); *Young v. Michigan Mut. Ins. Co.*, 139 Mich. App. 600, 605, 362 N.W.2d 844 (1984). However, it appears that no court has yet examined the issue of whether there is a private right of action to pursue violations of Chapter 21 of the Insurance Code. Plaintiffs contend that because the remedies available under Chapter 21 differ from those available under Chapter 20, the Court should not assume that there is no private right of action under Chapter 21. Chapter 20 authorizes the Commissioner to issue refunds to consumers injured by Unfair Trade Practices Act violations. M.C.L. § 500.2038(1)(c). Accordingly, Plaintiffs contend that a private right of action to enforce Chapter 20 would be superfluous. By contrast, Plaintiffs contend that the remedy provided by Chapter 21 is plainly inadequate because the Commissioner has no authority to order a premium refund.

There is a dispute between the parties as to whether or not the Commissioner has the authority to order a premium refund for violations of Chapter 21. Plaintiffs contend this issue was decided in the negative in *Allstate Ins. Co. v. Mich. Dep't of Ins.*, 195 Mich. App. 538, 491 N.W.2d 606 (1992). In *Allstate* the Commissioner ordered Allstate to refund overcharges to its policyholders based on Allstate's failure to provide an adequate basis for its rates in violation of § 2111. The Court of Appeals struck down that portion of the Commissioner's order requiring a refund because it was beyond the power vested in the Commissioner to order such a refund. The court noted that although the Insurance Code provides for a refund as a remedy for violations of Chapter 20, M.C.L. § 500.2038, the remedial provisions for violations of Chapter 21 are "quite different." *Allstate*, 195 Mich. App. at 544. Violations of Chapter 21 can only be remedied by the prospective relief of terminating the effectiveness of the rate filing. *Id* at 546. "[I]t is absolutely clear that the Legislature deliberately refused to vest the commissioner with power to order a refund for noncompliance with chapter 21." 195 Mich. App. at 547.

Defendant contends that *Allstate* addressed only the Commissioner's authority to remedy filing violations under § 2114, and that it does not control the Commissioner's authority to remedy incorrect premiums under § 2113. Defendant also contends that *Allstate* has been effectively overruled by the amendment of § 150 of the Insurance Code.

*Allstate* did not differentiate between actions under 2113 and actions under 2114. Instead, it used broad language limiting the Commissioner's remedial authority under

6

Chapter 21.  Moreover, Plaintiffs' action could be characterized as a § 2114 action challenging the filed rate as opposed to a § 2113 action challenging an incorrect premium because Plaintiffs allege that the considerations used in setting the rates was wrongful, not that the rates were incorrectly calculated.

Moreover, this Court is not convinced that *Allstate* has been overruled by the amendments to § 150.  Defendant has cited no authority in support of its assertion that the amendments to § 150 overruled *Allstate* or that § 150 provides the refund remedy that Plaintiffs seek.  By its terms, § 150 applies only to violations "for which a specific penalty is not provided under any other provision of this act."  M.C.L. § 500.150(1).  Because specific penalties are provided for violations of Chapter 21, it does not appear that § 150 applies to violations of Chapter 21.  Moreover, § 150 permits the Commissioner to order the violator to cease and desist from the violation, to pay a civil fine, and to suspend the violator's license or certificate of authority.  It says nothing about ordering a refund.  *Id.*

Based upon the broad language of *Allstate* and the nature of Plaintiffs' allegations, for purposes of this opinion the Court will assume that the Commissioner does not have authority to award the relief Plaintiffs seek, i.e., a refund.  The Court nevertheless finds that the remedies available under Chapter 21 are not "plainly inadequate."

In addition to finding that refunds were not authorized under Chapter 21, the *Allstate* court also found that the remedies provided in Chapter 21 were exclusive.  If a rate filing violates the requirements of Chapter 21, the Legislature has authorized the Commissioner

7

to issue an order stating when the filing "shall be considered no longer effective," and that order "shall not affect a contract or policy made or issued before the date the filing becomes ineffective." 195 Mich. App. at 545 (quoting M.C.L. § 500.2114(2)). "This would appear to be a fairly plain legislative attempt to provide that the exclusive remedy for a violation of chapter 21 is the commissioner's order terminating the effectiveness of the rate filing." 195 Mich. App. at 545-46.

None of the cases Plaintiffs cite support their contention that the remedies in Chapter 21 are "plainly inadequate." In *Genesis*, the court held that a plaintiff surgical center could not sue an insurance company for an alleged violation of the Nonprofit Heath Care Corporation Reform Act, M.C.L. § 550.1101 *et* seq., because under the statute only the Attorney General and the Insurance Commission are entitled to enforce the statute directly against a health care corporation. *Genesis*, 243 Mich. App. at 695 (quoting *Blakewoods Surgery Center v. Blue Cross and Blue Shield of Michigan*, No. 213666 (Mich. App. July 14, 2000) (unpublished). The court held that this remedy was not plainly inadequate as the plaintiff was not precluded from communicating its concerns to the Attorney General's office or to the local prosecutor. *Id.*

In *Pro-Staffers*, 252 Mich. App. at 326, the court held that an employer whose employee was injured by a third-party tortfeasor could not sue the third-party tortfeasor for damages in the form of increased worker's compensation premiums and lost profits because such damages were not recoverable under the statutory scheme established by the

8

Legislature. Under the statutory scheme the employer could only seek reimbursement for the amount of compensation paid to the injured employee from any recovery obtained by the employee against the third-party tortfeasor. *Id.* at 325. As explained in *Pro-Staffers*, "where a statute creates a liability and provides a remedy by suit specifically adapted to its enforcement, other less appropriate common-law remedies are impliedly excluded." *Id.* (quoting *Shriver v. Woodbine Savings Bank*, 285 U.S. 467, 478 (1932)). In other words, the Michigan Court of Appeals has clearly held that a statutory remedy is not "plainly inadequate" merely because it does not provide all the common-law remedies that an individual plaintiff might seek.

In *General Aviation*, 224 Mich. App. at 715, the court of appeals affirmed the trial court's determination that no private cause of action for monetary damages was available for a defendant's alleged breach of the Aeronautics Code. The court cited to the general rule that where a statute creates a right or duty not found in the common law, the remedies provided in the statute are exclusive. *Id.* at 715. The court then noted it would infer additional remedies only if those in the statute are "plainly inadequate," or where "the act provides no adequate means of enforcement of its provisions." *Id.* (quoting *Forster v. Delton School Dist.*, 176 Mich. App. 582, 585, 440 N.W.2d 421 (1989)).

Here the statutory remedies provide an adequate means of enforcement of the provisions of Chapter 21. The Commissioner can prospectively terminate the effectiveness of the rate filing. As noted in *Allstate*, the legislature "deliberately refused to vest the

9

commissioner with power to order a refund for noncompliance with chapter 21." 195 Mich. App. at 547. The legislature's choice to disallow a refund and to make the remedy prospective in nature does not render the enforcement scheme "plainly inadequate." The Commissioner still has the ability to correct improper rate filings. Because the Legislature's intent not to authorize refunds for violations of Chapter 21 is clear, this Court should not provide an additional remedy that the Legislature deliberately refused to provide.

The Court concludes that the remedy under Chapter 21 is exclusive and that Plaintiffs cannot sue Defendant for a violation of Chapter 21. Defendant's motion to dismiss Count III will accordingly be granted.

### III.

Plaintiffs allege in Count I of their complaint that Defendant breached an implied covenant of good faith and fair dealing implied in their contract of insurance with Defendant. Specifically, Plaintiffs allege that Defendant charged premiums "in accordance with a pricing matrix falsely certified to the State of Michigan as compliant with the dictates of the Essential Insurance Act." (Compl. ¶ 31). In other words, Count I, like Count III, is premised on violations of Chapter 21 of the Insurance Code.[1]  As noted above, because the statute

---

[1] In Count I Plaintiffs allege that Defendant "violated the implied covenant of good faith and fair dealing by charging premiums on a basis other than that permitted by . . . the Essential Insurance Act." (Compl. ¶ 30). In Count III Plaintiffs allege that they have been injured by Defendant's "violation of the Essential Insurance Act." (Compl. ¶ 41).

10

contains the exclusive remedy for violations of Chapter 21, Plaintiffs cannot state a claim for breach of contract based on Defendant's violation of Chapter 21.

Furthermore, Plaintiffs have not stated a claim for breach of the implied covenant of good faith and fair dealing.  In *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 666 N.W.2d 271 (2003), the Michigan Court of Appeals held that "Michigan does not recognize a claim for breach of an implied covenant of good faith and fair dealing," and affirmed the trial court's dismissal of the plaintiff's breach of implied covenant of good faith and fair dealing claim.  *Id.* at 476.  The quotation from *Belle Isle* is somewhat misleading. The case on which *Belle Isle* relied, *Ulrich v. Federal Land Bank of St. Paul*, 192 Mich. App. 194, 197, 480 N.W.2d 910, 911-12 (1991), simply held that "Michigan does not recognize an **independent tort action** for an alleged breach of a contract's implied covenant of good faith and fair dealing." *Id.* at 197 (emphasis added).  *See also Chrysler v. Cherokee Export Co.*, 134 F.3d 738, 745 (6th Cir. 1998) (same).  A more precise wording of the rule is that "Michigan does not recognize a separate cause of action for breach of an implied covenant of good faith and fair dealing apart from a claim for breach of the contract itself." *Liggett Restaurant Group, Inc. v. City of Pontiac*, No. 256571, 2005 WL 3179679 at *1 (Mich. App. Nov. 29, 2005) (unpublished).

Breach of contract actions based upon the breach of an implied covenant of good faith and fair dealing are limited to contracts where a contractual term leaves the manner of performance to one party's discretion.  "An implied covenant of good faith and fair dealing

11

in the performance of contracts is recognized by Michigan law only where one party to the contract makes its performance a matter of its own discretion." *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003) (citing *Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F.2d 873, 876 (5th Cir. 1989) (applying Michigan law); *James v. Whirlpool Corp.*, 806 F. Supp. 835 (E.D. Mo. 1992) (applying Michigan law)). "Where a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith." *Ferrell v. Vic Tanny Intern., Inc.*, 137 Mich. App. 238, 243, 357 N.W.2d 669, 672 (1984) (quoting *Burkhardt v. City National Bank of Detroit*, 57 Mich. App. 649, 652, 226 N.W.2d 678 (1975)). *See also Manon v. Corp. Solutions, LLC*, — F. Supp.2d —, 2005 WL 3534765, *6 (E.D. Mich. Dec. 23, 2005) ("Michigan recognizes such a cause of action when a party to a contract makes the manner of its performance a matter of its own discretion.").

In the case before this Court, Plaintiffs have not alleged that the automobile insurance contract at issue leaves the manner of Defendant's performance of the contract to Defendant's discretion. Plaintiffs have accordingly failed to state a claim of breach of an implied covenant of good faith and fair dealing in the performance of the contract.

Count I of Plaintiffs' complaint will accordingly be dismissed both because Plaintiffs do not have a private cause of action for violation of Chapter 21 of the Insurance Code and also because Plaintiffs have failed to state a claim for breach of an implied covenant of good faith and fair dealing.

## IV.

Plaintiffs allege in Count II that Defendant violated § 903 of the Michigan Consumer Protection Act ("MCPA"), M.C.L. § 445.903, by charging Plaintiffs higher premiums as a result of their economic circumstances while falsely certifying to the insurance commissioner that they were in compliance with the Essential Insurance Act.

Defendant moves to dismiss Count II because the MCPA does not apply to the business of insurance as it is a regulated business subject to separate statutory regulation.

The MCPA provides in pertinent part:

> (1) This act does not apply to either of the following:
>
> (a) A transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.

M.C.L. § 445.904(1). The Michigan Supreme Court held in *Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 597 N.W.2d 28 (1999), that

> Although [M.C.L. § 445.904(1)(a)] generally provides that transactions or conduct "specifically authorized" are exempt from the provisions of the MCPA, [M.C.L. § 445.904(2)] provides an exception to that exemption by permitting private actions pursuant to [M.C.L. § 445.911] arising out of misconduct made unlawful by chapter 20 of the Insurance Code. Therefore, the exemptions provided by [MCL 445.904(1)(a) and (2)(a)] are inapplicable to plaintiff's MCPA claims to the extent that they involve allegations of misconduct made unlawful under chapter 20 of the Insurance Code.

*Globe Life*, 460 Mich. at 467.

At the time the Court decided *Globe Life,* M.C.L. § 445.904(2) contained an exception to the § 904(1)(a) exemption and permitted private actions pursuant to M.C.L. § 445.911 that

arose out of misconduct made unlawful by Chapter 20 of the Insurance Code. *Globe Life*, 460 Mich. at 467. The exception to the exemption did not apply to conduct made unlawful by Chapter 21. Moreover, subsequent amendments to M.C.L. § 445.904 enacted in 2000 eliminated the ability to bring a MCPA claim against an insurance company under M.C.L. § 445.911.[2] *Rodgers v. North American Ins. Co.*, No. 251926, 2005 WL 1683548 at *2-3 (Mich. App. July 19, 2005) (unpublished); *Kitterman v. Michigan Educational Employees Mut. Ins. Co.*, No. 247428, 2004 WL 1459523, *6 (Mich. App. June 29, 2004). Because the amendments eliminated a plaintiff's ability to enforce the provisions of the MCPA against insurance companies through M.C.L. § 445.911, "the MCPA no longer applies to insurance companies." *Milhouse v. Michigan Basic Property Ins. Ass'n*, No. 257701, 2005 WL 3501364 at *5 (Mich. App. Dec. 22, 2005) (unpublished).

Plaintiffs contend that even if M.C.L. § 445.904(1)(a) generally exempts authorized actions by insurance companies from the MCPA, Defendant's use of credit history and lapse in coverage as auto insurance rating factors is not exempt from the MCPA because those transactions have not been "specifically authorized" by a regulatory authority.

---

[2]The amended statute now contains the following provision:

> This act does not apply to or create a cause of action for an unfair, unconscionable, or deceptive method, act, or practice that is made unlawful by chapter 20 of the insurance code of 1956, 1956 PA 218, MCL 500.2001 to 500.2093.

M.C.L. § 445.904(3).

Plaintiffs' contention regarding what it means to be "specifically authorized" ignores the Supreme Court's advice in *Globe Life*:

> [W]e conclude here that, when the Legislature said that transactions or conduct "specifically authorized" by law are exempt from the MCPA, it intended to include conduct the legality of which is in dispute. . . . [T]he relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is "specifically authorized." Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited.

*Globe Life*, 460 Mich. at 465.

The general transactions at issue in this case involve the filing of insurance rates and the issuance of an insurance policy. These transactions are subject to the provisions of the Essential Insurance Act. Because these transactions are specifically authorized under laws administered by the Office of Financial and Insurance Services, a regulatory board acting under statutory authority of the State of Michigan, these transactions do not give rise to an action under the MCPA regardless of whether the specific misconduct alleged is prohibited. Because Plaintiffs have failed to state a claim under the MCPA, Count II, alleging violations of the MCPA, will be dismissed.

## V.

This Court has determined above that all three counts of the complaint are subject to dismissal for failure to state a claim on which relief can be granted. Even if they were found to state a claim, the Court is still of the firm conviction that it would not be appropriate to proceed on this case, either because the court lacks jurisdiction over this case because

15

Plaintiffs have failed to exhaust the administrative remedies provided in the Michigan Insurance Code, or under the doctrine of primary jurisdiction.  *See Travelers Ins. Co. v. Detroit Edison Co.*, 465 Mich 185, 205-06, 631 N.W.3d 733 (2001).

Michigan generally requires parties to exhaust their administrative remedies before resorting to the courts for relief.  "[W]here an administrative grievance procedure is provided, exhaustion of that remedy prior to review by the courts is necessary except where excused."  *Provincial House, Inc. v. Dep't of Social Servs.*, 167 Mich. App. 1, 10, 422 N.W.2d 241 (1988) (citing *Doster v. Estes*, 126 Mich. App. 497, 514, 337 N.W.2d 549 (1983)).  *See also Ackerberg v. Grant Community Hosp.*, 138 Mich. App. 295, 299, 360 N.W.2d 599 (1984) ("Courts will not act in contravention of administrative agencies where the remedies available through administrative channels have not been pursued to completion.").  The doctrine of exhaustion of administrative remedies serves the following policies:

> (1) an untimely resort to the courts may result in delay and disruption of an otherwise cohesive administrative system; (2) judicial review is best made on a full factual record developed before the agency; (3) resolution of the issues may require the accumulated technical competence of the agency or may have been entrusted by the Legislature to the agency's discretion; and (4) a successful agency settlement of the dispute may render a judicial resolution unnecessary.

*Provincial House*, 167 Mich. App. at 10-11 (citing *Doster*, 126 Mich. App. at 514-15).

The doctrine of primary jurisdiction is appropriately applied "whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been

placed within the special competence of an administrative body." *Travelers*, 465 Mich. at 206 (quoting *Rinaldo's Constr. Corp. v. Mich. Bell Tel.*, 454 Mich. 65, 71, 559 N.W.2d 647 (1997)).

Plaintiffs do not contest the existence of administrative remedies under Chapter 21 nor their failure to exhaust them. Instead, they contend that they are not required to exhaust their administrative remedies because the remedies are inadequate. Specifically, Plaintiffs contend that the Commissioner lacks power to enforce a violation of Chapter 21 the Insurance Code by ordering the refund of premiums. (Compl. ¶ 9).

Michigan cases have held that exhaustion of administrative remedies is not an inflexible condition precedent to judicial consideration, and that it is not required if review of the agency's final decision would not provide an adequate remedy, i.e., if it would run counter to the policies which underlie the doctrine. *International Business Machines Corp. v. State, Dept. of Treasury, Revenue Division*, 75 Mich. App. 604, 610, 255 N.W.2d 702, 705 (1977).

It appears to the Court in this case that whether or not Plaintiffs can obtain the remedy they seek through the administrative procedures under Chapter 21, resort to those administrative procedures would further the policies which underlie the doctrine of exhaustion of administrative remedies and the doctrine of primary jurisdiction. This case calls for interpretation of M.C.L. § 500.2110a and its application to rating factors for automobile insurance. The pertinent language of 2110a reads as follows:

> If uniformly applied to all its insureds, an insurer may establish and maintain a premium discount plan utilizing factors in addition to those permitted by section 2111 for insurance if the plan is consistent with the purposes of this act and reflects reasonably anticipated reductions in losses or expenses.

M.C.L. § 500.2110a.

The application of § 2110a cries out for the expertise of the Commissioner of Insurance and the Office of Financial and Insurance Services. The term "premium discount plan" is a term of art, and the issue of whether a plan is "consistent with the purposes of the act" and whether it reflects "reasonably anticipated reductions in losses or expenses" calls first for the expertise of those who are specialists in the insurance code, rather than in the law. Prior to the Court's involvement, the Commissioner and the Office of Financial and Insurance Services should be given the opportunity to apply their expertise to the complex task of insurance rate-making and premium development. The Commissioner can hold a hearing and make detailed factual findings regarding this issue so that, if a subsequent court proceeding is necessary, it will be an informed one. This is not the proper forum for developing the evidence regarding the anticipated reductions of a particular rate plan, or the consistency of a rate plan with the purposes of the act.

For all of the reasons set forth above, the Court will grant Defendant's motion to dismiss. An order consistent with this opinion will be entered.

Date:   January 13, 2006            /s/ Robert Holmes Bell
                                    ROBERT HOLMES BELL
                                    CHIEF UNITED STATES DISTRICT JUDGE